```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


CHUBB CUSTOM INSURANCE                    CIVIL ACTION
COMPANY


VERSUS                                    NO: 04-0950


BURNETT & COMPANY, INC.                   SECTION: "J"(5)
```

### ORDER AND REASONS

In this case, two insurers dispute how to allocate coverages for property damage and other losses stemming from the blowout of an oil well that occurred in 1998. The two insurers, Chubb Custom Insurance Company ("Chubb") and Certain Underwriters at Lloyds of London ("Certain Underwriters"), each insured a party to a joint operating agreement. Chubb's insured, as the designated operator, held a 75% interest, and Certain Underwriters' insured, as the non-operator, held a 25% interest.

As a consequence of the blowout, two separate claims were filed. One claim resulted in a judgment in favor of the rig owner and against Chubb's insured for property damage in the amount of $781,430. Chubb funded that judgment entirely, and now seeks to require Certain Underwriters to reimburse 25% of the

total amounts paid by Chubb.

The second claim arising out of the blowout was by the well site owners/mineral lessors for lost production and damage to their property. Ultimately, this claim was settled for approximately $10 million following mediation in which both Chubb and Certain Underwriters participated. Chubb paid 75% and Certain Underwriters paid 25% to fund this settlement.

The parties have filed cross motions for summary judgment: Chubb's motion seeks to require Certain Underwriters to reimburse 25% of the amounts paid on the judgment in favor of the rig owner. Certain Underwriters' two motions seek (1) summary judgment on Chubb's claim; and (2) reimbursement from Chubb of the 25% contribution by Certain Underwriters to fund the settlement with the property owners/mineral lessors, plus reimbursement of 25% share of the associated attorneys' fees. This Court heard oral argument on these motions on March 29, 2006. For the reasons that follow, the Court finds that Certain Underwriters' motions should be granted and Chubb's motion should be denied.

## BACKGROUND

On July 30, 1998, Miller Exploration Company ("Miller") and Clovelly Oil Company ("Clovelly") entered into a Joint Operating Agreement for oil exploration on a tract of land in Catahoula

Parish owned by Victor Vegas ("Vegas"). Miller was to act as the Operator and Clovelly was to act as the Non-Operator. As the Non-Operator, Clovelly's ultimate interest in the well was 25%. Chubb insured Miller and Certain Underwriters insured Clovelly. Both Chubb and Certain Underwriters wrote multiple policies that were in effect for their respective insureds at the time of the blowout.[1]

Miller entered into a contract with Energy Drilling Company ("EDC") to provide the rig and equipment for the drilling of the wells, and on October 1, 1998, the Vegas No. 1 well ("Vegas well") was spudded. Three days later, the well blew out when the EDC drilling crew encountered a high pressure saltwater formation. EDC's rig and equipment sank into the crater that formed as a result of the blowout. On April 13, 1999, EDC filed a lien on the Vegas well. In response, Miller filed a declaratory judgment action in the Western District of Louisiana asking the Court to determine that it did not have any responsibility to EDC for the rig and equipment. EDC counterclaimed seeking replacement costs for the same.

In January 2001, the district court in <u>Miller v. EDC</u> cast

---

[1] Specifically, Clovelly's policies of insurance with Certain Underwriters included : (1) a well control policy, (2) a comprehensive general liability policy, and (3) an excess liability policy. Burnett & Company served as managing general agent for Certain Underwriters. Miller had (1) a general commercial liability policy, (2) a pollution liability policy, and (3) a commercial umbrella policy through Chubb, and a well control policy through different London underwriters.

Miller in judgment for the cost of repairing the damaged rig, the lost drill pipe, and the day rates pursuant to the contract. Miller v. EDC, 130 F. Supp. 2d 781 (W.D. La. 2001). Miller appealed, and the Fifth Circuit affirmed, remanding the case for consideration of certain damages and attorneys fees. Miller v. EDC, 31 Fed. Appx. 835 (5th Cir. 2002). The parties entered into a consent final judgment in September 2002 and later that month Chubb, as Miller's insurer, funded the entirety of the judgment against Miller, in the amount of $781,430.70.

After funding the entire judgment, Chubb approached Burnett & Company (the U.S. cover note holder for Certain Underwriters) with a demand for 25% of the amount it funded to satisfy the judgment against Miller. Certain Underwriters denied this request, and Chubb filed the instant suit in April 2004 seeking a declaratory judgment entitling it to 25% of the amount it funded to satisfy the judgment against Miller. (Rec. Doc. 1).

In July 1999, only a few months after the EDC litigation began, the Vegases filed suit in Orleans Parish against Miller, Clovelly, and other entities, alleging lost production and damage to their property and underground aquifers.[2] On January 8, 2003, following a mediation, Vegas v. Miller Exploration, et al. was

---

[2] Case No. 99-11684.

4

settled for approximately $10,000,000.00. Chubb funded 75% of the settlement, and Certain Underwriters funded 25%. In its counterclaim against Chubb in the instant lawsuit, Certain Underwriters seeks reimbursement for its 25% contribution of the Vegas settlement and reimbursement for its 25% contribution to the attorneys fees and costs associated with that matter. Certain Underwriters also seeks judicial interest on the above amounts.

**Pertinent Excerpts from the Joint Operating Agreement and Insurance Policies:**

Exhibit D to the Joint Operating Agreement provides:

> Operator shall maintain cost of well control insurance and charge premiums to said Non-Operators account. Non-Operators may elect to be covered by Operators well control insurance and be named as additional insured. However, Non-Operators may elect not to be covered by Operator's well control insurance concurrently with the time elections to participate in proposed operations are returned to Operator. Should a Non-Operator elect not to be covered by Operator's well control insurance, said Non-Operator shall provide Operator with a certificate of insurance.
>
> . . . .
>
> Liability, *except that covered by insurance*, against any of the parties hereto for damages to property of third persons or injury to or death of third persons arising out of the joint operations, including expenses incurred in defending claims or actions asserting liability of this character, shall be borne severally and not jointly by the parties hereto in proportion to their respective

undivided interests in the joint operation.[3]

Chubb's Commercial General Liability ("CGL") policy states that an insured includes "any non-operating working interests in any oil or gas lease with any co-owners, joint ventures, or mining partners, but only with respect to liability arising out of such interests . . . ."[4]  This policy further indicates it is primary coverage except when the below applies:

>   b.   Excess Insurance
>
>   This insurance is excess over any of the
>   other insurance, whether primary,
>   excess, contingent or on any other
>   basis:
>
>   (1)   That is Fire, Extended
>         Coverage, Builder's Risk,
>         Installation Risk or
>         similar coverage for your
>         work;
>   (2)   That is Fire insurance
>         for premises rented to
>         you; or
>   (3)   If the loss arises out of
>         the maintenance or use of
>         aircraft, autos or
>         watercraft to the extent
>         not subject to Exclusion
>         7. of Coverage A (Section
>         I).
>
>   When this insurance is excess, we will
>   have no duty under Coverage A or B to
>   defend any claim or suit that any other
>   insurer has a duty to defend.  If no

---

[3] Exh. A, B&C 000196, Certain Underwriters' Mot. Summ. J, <u>emphasis added</u>.

[4] Exh. J, CH0630, Certain Underwriters' Mot. Summ. J.

>           other insurer defends, we will undertake
>           to do so, but we will be entitled to the
>           insured's rights against all those other
>           insurers.[5]

The Amendatory Clauses to Certain Underwriters' CGL policy provide that an insured includes the following:

>       Non-operating owners or non-operating co-owners,
>       joint ventures or mining partners of oil or gas
>       operations when the Named Insured acts as agent
>       for same non-operating owners or non-operating co-
>       owners, joint ventures or mining partners of oil
>       or gas operations.  It is further agreed that such
>       insurance as is afforded to the non-operating
>       owners or non-operating co-owners, joint ventures,
>       or mining partners under this paragraph *shall
>       apply as excess insurance over and above any other
>       valid and collectible insurance available to such
>       non-operating owners* or non-operating co-owners,
>       joint ventures or mining partners.[6]

The evidence shows that Miller and Clovelly had entered into their joint operating agreement in connection with drilling of various wells.  In some instances, as in this case, Miller was the operator and Clovelly was the non-operator.  In other instances, the roles were reversed.  The agreement and related insurance policies were structured so that the operator's liability insurance policies were intended to be primary and to cover the non-operator as an additional insured.  The joint operating agreement also provided that any liabilities, "except

---

[5] Exh. J, CH0621-22, Certain Underwriters' Mot. Summ. J.

[6] Exh. L, COC 118, Certain Underwriters' Mot. Summ. J.

7

that covered by insurance", would be shared by the operator and non-operator according to the percentages set out in the agreement.

At oral argument, counsel for Chubb conceded that in the circumstances of this case, Clovelly as non-operator would be covered as an additional insured under Miller's liability policies with Chubb.  It also is not seriously disputed that as the insurer for the operating interests, Chubb's policies would be primary and Certain Underwriters' policies would be excess. There is adequate insurance to cover all of the losses sustained. Under the terms of the joint operating agreement, the parties do not share liabilities proportionately until all insurance is exhausted.  Accordingly, the only serious issue that remains is whether, as claimed by Chubb, waiver or estoppel principles preclude Certain Underwriters from asserting any coverage issues at this stage of the litigation.

**The Summary Judgment Motions**

As referenced above, the parties filed three motions for summary judgment, which are now before the Court.  Although these motions raise an assortment of issues, the Court concludes that this case should be resolved solely on the basis of a single legal issue, i.e., whether principles of waiver and estoppel can be applied to a coverage dispute between two insurers.

Chubb claims that Certain Underwriters assumed Clovelly's defense for all claims and lawsuits stemming from the blowout without timely reserving any rights to assert coverage defenses under the various policies issued to Clovelly, thereby waiving any right to do so now. Chubb claims that it relied on this waiver to its detriment, and Certain Underwriters is, therefore, equitably estopped from asserting such defenses now.

Chubb contends Certain Underwriters is estopped from now taking the position that Clovelly qualifies as an insured under Chubb's policies because Certain Underwriters failed to assert a reservation of rights regarding the allocation of payment, which induced Chubb to adopt adjustment, litigation and settlement strategies and responsibilities that otherwise would have been entirely different. Chubb contends that, under Louisiana law, waiver occurs if Certain Underwriters had knowledge of facts indicating non-coverage, yet voluntarily assumed Clovelly's defense without timely obtaining a non-waiver agreement to reserve its rights.

Certain Underwriters argues that this is purely a coverage dispute between two sets of insurers without the involvement of any insured, and as such, the doctrines of waiver and estoppel do not apply.

Certain Underwriters asserts that there is adequate coverage

9

for both the operating and non-operating working interests under Chubb's policies, and the existence of Chubb's insurance supercedes and overrides any liability of Clovelly for its percentage of participation under the Joint Operating Agreement until the exhaustion of that insurance.  Certain Underwriters notes that Chubb, as a matter of law, is presumed to know the contents of its own insurance policy. Thus, Chubb knew it provided primary general liability insurance coverage for Clovelly, as a non-operating interest owner, and contrary to it's assertions, could not have been deceived into believing it had no exposure for this loss.

## **LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, discovery, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir.1994) (citing Fed. R. Civ. Proc. 56(c)). The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues. <u>Id.</u> Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute. <u>Id.</u> "A factual dispute is 'genuine' where a reasonable jury could return a verdict for

the non-moving party. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." <u>Weber v. Roadway Exp., Inc.</u>, 199 F.3d 270, 272 (5th Cir.2000) (citations omitted).

## **DISCUSSION**

First, the parties agree that Louisiana law governs this dispute.

Although the factual background here is complicated, the law is not.  The Fifth Circuit has explained that the doctrines of waiver and estoppel do not apply between two insurers.  In <u>St. Paul Mercury Ins. Co. v. Lexington Insurance</u>, 78 F.3d 202 (5th Cir. 1996), two insurers argued that an insurer must reserve its right vis à vis another insurer when it assumes the defense of an insured.  The Fifth Circuit disagreed, determining that there is a difference between reserving a right as to an insured as opposed to another insurer.  The Fifth Circuit instructed that the doctrines of waiver and estoppel were meant to protect an insured - not an insurer.  "In sum, the waiver rule invoked by [the two insurers] is simply not intended to be applied to the relationship among insurers."  <u>Id.</u> at 208.  In so holding, the Fifth Circuit rejected one insurer's argument that another insurer had waived its right to rely on "other insurance" clauses

11

by neglecting to specifically reserve its right.  The Court explained that one reason for this rule is the existence of conflicts of interest between the insurer and the insured in connection with the conduct of the insured's defense.

It should be noted that the St. Paul Mercury Court applied Texas law in accordance with choice-of-law rules; however, the Court gave no indication that this determination would be different when applying another state's law.  It also should be noted that in St. Paul Mercury, the two insurers reserved the right to seek judicial adjudication of their obligations to contribute to the settlement.  This Court does not find this fact determinative of the outcome; the St. Paul Mercury Court did not indicate that its holding was based, even in part, on the parties' reservation of their right to seek a judicial review.

Although no Louisiana cases (or cases that apply Louisiana law) specifically address the issue of whether waiver and estoppel doctrines may be asserted between two insurers, a Louisiana Supreme Court case explains that waiver principles should be applied stringently to uphold the prohibition against conflicts of interest between the insurer and the *insured*.  See Steptore v. Masco Construction Co., Inc., 93-2064 (La.  8/18/94), 943 So.2d 1213.  Notably, this is one of the reasons the Fifth Circuit in St. Paul Mercury held that the concepts of waiver and

12

estoppel do not apply between two insurers.  Specifically, the Louisiana Supreme Court stated the following regarding waiver:

> Waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest. Accordingly, when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense.

Id. at 1216, internal citations omitted.

Because the Louisiana Supreme Court recognizes the same policy reason regarding waiver principles being applied stringently to uphold the prohibition against conflicts of interests as the Fifth Circuit recognized in St. Paul Mercury, this Court concludes that the Fifth Circuit's stance on waiver and estoppel defenses between insurers, as expressed in St. Paul Mercury, is in accord with Louisiana law.  See also, Federal Deposit Insurance Corp. v. Duffy, 835 F. Supp. 307, 318 (E.D. La. 1993) (concluding that the benefits of waiver and estoppel could only be raised by parties to an insurance contract).

Other federal and state courts have reached the conclusion that the doctrines of waiver and estoppel do not apply to cases

13

involving disputes between two insurers.  See <u>Alliance General Insurance Co. v. The Insurance Co. of the State of Pennsylvania</u>, 134 F.3d 362 (4th Cir. 1998) (recognizing that the doctrine of estoppel does not apply between insurers because its purpose is "to protect the insured once she has given up all control of her defense of the lawsuit"); <u>Iowa National Mutual Insurance Co. v. Liberty Mutual Insurance Co.</u>, 464 N.W.2d 564, 568 (Minn. Ct. App. 1991)("The general rule estopping an insurance company from denying liability is not applicable where estoppel is asserted by one insurer against another insurer"); <u>American General Fire and Casualty Co. v. Progressive Casualty Co.</u>, 799 P.2d 1113, (N.M. 1990)("The reason for the rule estopping the insurer from denying coverage without the reservation of rights is the presumptive potential of prejudice to the insured caused by the insurer's total control of the litigation, the insured's reliance on the insurer, and the insurer's fiduciary duty vis-a-vis the insured. The rule does not operate to preclude a suit such as this whereby one insurer attempts to assert that another insurer provided primary coverage."); <u>Western Casualty and Surety Co. v. American National Fire Insurance Co.</u>, 318 N.W.2d 126 (S.D. 1982)("Only the parties to the contract of insurance, or their privies, can claim the benefit of a waiver or estoppel").  But see <u>Insurance Co. of North America v. Travelers Insurance Co.</u>, 692 N.E.2d 1028, 1042

14

(Ohio Ct. App. 1997)("The public policy behind requiring the insurer undertaking the defense to announce a reservation of rights is a sound one" and "should not be eroded simply because the beneficiary of such a policy is another insurance company rather than the insured itself"); Transamerica Insurance Group v. Chubb and Son, Inc., 554 P.2d 1080 (Wash. Ct. App. 1977) (by assuming the defense of the underlying lawsuits for ten months, the insurer had prejudiced the construction company's interests by preventing them from defending themselves by choosing their own attorneys).[7]

Based on the Fifth Circuit's decision in St. Paul Mercury and the Louisiana Supreme Court's reasoning on the conflicts of interests associated with waiver principles explained in the Steptore decision, this Court finds that waiver and estoppel principles do not apply between insurers. Therefore, Certain Underwriters is not estopped from asserting a coverage defense against Chubb and did not waive its right to do so.

Because this Court holds that the doctrines of waiver and estoppel do not apply between two insurers, the only remaining issue to be addressed is whether the language of the policies makes Chubb the primary coverage provider. Based on this Court's

---

[7] Notably, Transamerica and Travelers Insurance are distinguishable from the instant case because, in both of those cases, it was the insurer who undertook the defense of the underlying lawsuits who did not reserve its right to deny coverage but chose to assert the defense after months of litigation.

15

analysis of the clear and unambiguous language of the policies and on counsel's concession during oral argument that Clovelly was an additional insured under the policies issued by Chubb, this Court concludes that Chubb provided primary coverage to Clovelly for the following reasons.

Chubb's CGL policy states that an insured includes "any non-operating working interests in any oil or gas lease with any co-owners, joint ventures, or mining partners, but only with respect to liability arising out of such interests."[8]  Chubb's "other insurance" policies explain that Chubb's insurance is considered to be primary except when certain conditions apply. Id.  Because none of the enumerated circumstances apply in this situation, this Court determines that Chubb provides the primary insurance coverage.  Additionally, Chubb has an umbrella policy that contains a drop-down provision that makes it underlying coverage when the actual underlying coverage is exhausted.[9]  The Joint Operating Agreement between the parties establishes that Clovelly (in other words - Certain Underwriters on its behalf) has no liability for its percentage of participation until all insurance is exhausted.

Alternatively, even assuming that waiver principles applied,

---

[8]     Exh. J, Certain Underwriters' Mot. Summ. J.

[9]     Exh. K, Certain Underwriters' Mot. Summ. J.

Chubb has not and cannot establish that it was prejudiced by and/or detrimentally relied on Certain Underwriters' actions. Notably, Chubb's counsel admitted during oral argument that, in regard to the EDC litigation, he does not know what Chubb would have done differently had it known beforehand that Certain Underwriters claimed Chubb, on behalf of Miller, provided primary coverage to Clovelly.  In fact, Clovelly and/or Certain Underwriters on its behalf, were not parties to and took no part in the EDC litigation and were only notified by Chubb of its demand for a 25% contribution after the consent final judgment was consummated.

   Furthermore, Chubb, as a matter of law, is presumed to know the contents of its own insurance policy.  Steptore v. Masco Construction Co., Inc., 93-2064 (La. 8/18/94), 943 So. 2d 1213. As recognized by the Louisiana Supreme Court in Steptore, an insured might be misled into believing it had coverage and rely on that misunderstanding to its detriment.  Chubb, as an insurer, cannot be misled into believing it has no exposure for a loss when it is charged with the knowledge of the scope of coverage under its own  policy.   Certain Underwriters did not undertake to defend Chubb's insured, Miller, to the possible detriment of Miller or Chubb.  Chubb was at all times in control of its own defense and that of its insured. Chubb, as a matter of law, knew

17

it provided primary general liability insurance coverage to both Miller and Clovelly under the circumstances of this case.[10]

Therefore, because the doctrines of waiver and estoppel do not apply between insurers and based on the clear and unambiguous language of the policies (coupled with counsel's admission that Clovelly is an additional insured under the policies issued by Chubb), this Court finds that Certain Underwriters' CGL policy was excess to that of Chubb's CGL policy.  Accordingly, this Court concludes that Chubb properly funded the entire EDC consent judgment and further concludes that Certain Underwriters should be reimbursed by Chubb for the amounts it contributed to the Vegas settlement.

## CONCLUSION

No material fact issues are in dispute that preclude summary judgment in this case. To the extent Chubb's primary policy and umbrella policy were not exhausted, Certain Underwriters is not responsible for 25% of the amount Chubb paid towards the EDC judgment, nor is it responsible for 25% of the defense costs incurred with that matter.  For the same reasons, Certain Underwriters is entitled to reimbursement for its 25% contribution to the Vegas settlement in the amount of

---

[10] Incidentally, despite Chubb's presumed knowledge of this detail, it never reserved any rights to deny coverage for Clovelly's non-operating interest - a fact which it asserts is necessary to prevail on a coverage issue dispute.

$2,358,500.00 along with reimbursement for its 25% contribution to the defense costs associated with that matter in the amount of $125,437.56.  Further, Certain Underwriters is entitled to legal interest on the above amounts from the date of judicial demand (i.e., the date Certain Underwriters filed its counterclaim against Chubb) until paid.  If and to the extent Certain Underwriters is seeking attorneys fees regarding the instant suit, that request is denied.

Accordingly,

**IT IS ORDERED** that the first motion for summary judgment filed by Certain Underwriters **(Rec. Doc. 38)** should be **GRANTED**, and the claims against it are hereby **DISMISSED. IT IS FURTHER ORDERED** that the motion for summary judgment filed by Chubb **(Rec. Doc. 45)** should be **DENIED.  IT IS FURTHER ORDERED** that the second motion for summary judgment filed by Certain Underwriters **(Rec. Doc. 62)** should be **GRANTED**.

New Orleans, Louisiana, this __15th__ day of June, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE